IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARY K. REVELLO, ) | Case No. 5:20-CV-01860 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | THOMAS M. PARKER |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER**[1] |
| Defendant. ) | |

Plaintiff, Mary Revello, seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Revello challenges the Administrative Law Judge's ("ALJ") negative findings, contending that the ALJ erred in (1) finding that her urinary incontinence and prolapsed bladder were non-severe impairments and (2) not including restroom breaks, due to those conditions, in his residual functional capacity ("RFC") findings.  Because the ALJ failed to apply proper legal standards in analyzing Revello's non-severe impairments, the Commissioner's final decision denying Revello's applications for DIB and SSI must be vacated and Revello's case must be remanded for further consideration.

---

[1] This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  ECF Doc. 13.

I.  **Procedural History**

On September 21, 2017, Revello applied for DIB and SSI. (Tr. 257-267).[2] Revello alleged that she became disabled on July 19, 2017, due to (1) post-traumatic stress disorder ("PTSD"), (2) anxiety, (3) depression, (4) obsessive compulsive disorder ("OCD"), (5) migraines, (6) irritable bowel syndrome ("IBS"), and (7) tendinitis. (Tr. 310, 302). The Social Security Administration ("SSA") denied Revello's claims initially and upon reconsideration. (Tr. 116-129, 146-160). Revello requested an administrative hearing. (Tr. 209-210).

ALJ Michael Schmitz heard Revello's case on July 19, 2019 and denied her claim in an August 6, 2019 decision. (Tr. 15-26). At Step Two of the sequential evaluation process, the ALJ determined that Revello's prolapsed bladder and urinary incontinence, among other conditions, were non-severe impairments. (Tr. 19). At Step Four of the sequential evaluation process, the ALJ determined that Revello had the RFC to perform light work, with the following limitations:

> [Revello] can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch and crawl. She can frequently balance. She can reach, handle, and finger with her bilateral upper extremities. The claimant must avoid concentrated exposure to extreme cold and vibrations, loud noise and very bright lights (brighter than a typical office setting), and avoid all exposure to hazards such as unprotected heights and moving mechanical parts. She can perform simple, routine and repetitive tasks, but cannot perform tasks at a production rate pace, such as assembly line work. The claimant can respond appropriately to occasional changes in a routine and relatively static work setting, as long as any such changes are easily explained and/or demonstrated in advance of gradual implementation. She can interact on an occasional basis with supervisors and co-workers, with no more than incidental interaction with the general public, and should be limited to superficial contact meaning no sales, arbitration, negotiation, conflict resolution or confrontation, no group, tandem or collaborative tasks, and no management, direction or persuasion of others.

(Tr. 20-21).

---

[2] The administrative transcript appears in ECF Doc. 11.

Based on vocational expert testimony that a hypothetical individual with Revello's age, experience, and RFC could work such available occupations as "Checker," garment sorter, and folding-machine operator, the ALJ determined that Revello wasn't disabled. (Tr. 25). On June 23, 2020, the Appeals Counsel denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). On August 20, 2020, Revello filed a complaint to obtain judicial review. ECF Doc. 1.

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Revello was born on May 13, 1966 and was 51 years old on her alleged onset date. (Tr. 310). She had completed the eleventh grade and had specialized job training as a hairdresser. (Tr. 303). She previously worked as a hairdresser and home health care worker. *Id.*

### B. Relevant Medical Evidence

Revello exclusively focuses her challenge on the ALJ's findings for her prolapsed bladder and urinary incontinence; thus, it is only necessary to summarize the evidence related to those impairments. *See generally* ECF Doc. 14. However, it is noteworthy that from April 2017 to April 2019, Revello received medical treatment from her primary care physician, as well as psychiatric counseling, physical therapy, and treatment with rheumatologist Inderprit Singh, MD; none of the treatment notes made more than a passing reference to her prolapsed bladder or urinary incontinence. (*See* Tr. 381-387, 406-407, 429-433, 446-457, 490-495, 502-503, 540-572, 730-743).

As background to her conditions, on October 3, 2016, Revello saw her gynecologist about pelvic pain, constipation, and urinary frequency and urgency. (Tr. 749). Shortly

thereafter, she underwent a hysterectomy (Tr. 756), and her post-operation follow-up appointments were normal. (Tr. 758-770).

On May 3, 2017, Revello returned to her gynecologist, complaining of increased menopause systems following her hysterectomy. (Tr. 420). She reported that she had no symptoms for the month immediately following her surgery but then the symptoms returned. *Id.* In reviewing her symptoms, Revello reported that her genitourinary and gynecological systems were normal. (Tr. 421). Her prolapsed bladder and urinary incontinency were never mentioned. (Tr. 420-425).

On July 16, 2018, Revello saw her gynecologist, complaining of a prolapsed bladder and increased incontinence. (Tr. 778). Revello reported that she had been experiencing urinary incontinence for six months and, although her urine leakage was better after her hysterectomy, it was now was getting worse. *Id.* She also complained of urinary frequency, urinary urgency, and nocturia. *Id.* On physical examination, it was noted that she had vaginal atrophy and rectocele. (Tr. 782). She was instructed to maintain a healthy diet with high fiber. (Tr. 784).

On August 22, 2018, during one mental health counseling session, Revello noted that she was expecting to have bladder surgery and had "been putting it off for several years." (Tr. 553).

On March 18, 2019, Revello saw John Zhao, MD, with University Hospitals. (Tr. 909, 913). She reported experiencing bladder issues, incontinence, and urgency. (Tr. 909). She noted that she had had a hysterectomy, "her bladder feels like it's dropped," and she felt contact pressure. *Id.* On physical examination, her genitourinary system appeared normal. (Tr. 912). Dr. Zhao's impression was that she had issues with "frequency urgency," urinary incontinency, and cystocele. (Tr. 909). They planned on her undergoing a cystoscopy. *Id.*

4

On March 25, 2019, Revello returned to her gynecologist for her annual exam. (Tr. 785). She reported that she would be following up with her urologist, Dr. Zhao, and would soon have surgery for her bladder. *Id.* Her physical examination was normal, save for vaginal atrophy and a "minimal amount of redness." (Tr. 789-790). In the assessment, it was noted that she had decreased support for her bladder. (Tr. 791).

On April 2, 2019, Revello had a mental health counseling session, reporting that she was having bladder surgery, was incontinent, and required a "bladder lift." (Tr. 730-731).

On April 18, 2019, Revello underwent a cystoscopy. (Tr. 904). It indicated that she had atrophic vaginitis and Dr. Zhao discussed her urinary incontinence in its frequency and urgency, her vaginitis, the use of Estrace cream, and a "SPARC" procedure. *Id.* She planned on undergoing a SPARC procedure. *Id.* She was diagnosed with frequency-urgency syndrome, urinary incontinence, stress incontinence, and atrophic vaginitis. (Tr. 907).

On April 24, 2019, Revello's primary care physician was contacted by Dr. Zhao to clear Revello for surgery. (Tr. 939). Two days later, Revello called and canceled the surgery because she was going to seek a second opinion. (Tr. 939-940).

    C.    **Relevant Opinion Evidence**

        1.    **Medical Source – Inderprit Singh, MD**

On July 9, 2019, following an examination, Dr. Singh opined that Revello "would not be able to work in any occupation above the sedentary exertional level (sitting 6 hours in a 8 hour work day, and lifting more than [10] pounds)" and that Revello would be "absent from work more than 2 days per month and [would] be off task >50% of the day." (Tr. 932).

5

### 2. Mary Revello's Function Report

On November 11, 2017, Revello completed a report on her functional limitations. (Tr. 313-320). In identifying how her conditions affected her ability to work, she did not note any limitations based on her prolapsed bladder or urinary incontinence. (Tr. 318). In describing her personal care, she identified that she had issues with frequent urination and "some" leaking, but she did not attribute any limitation in her daily activities specifically because of those problems. (*See* Tr. 313-320).

### 3. State Agency Physical Health Consultants

On December 7, 2017, Diane Manos, MD, reviewed Revello's physical limitations based on the medical evidence. (Tr. 126). She found that there were no significant changes from Revello's prior SSA application and, as a result, Revello was restricted to performing light work with the following limitations:

> [T]he claimant can frequently balance, stoop, kneel, crouch, climb ramps and stairs, may never climb ladders, ropes, or scaffolds; the claimant may not be exposed to more than loud noise levels, as defined by the Dictionary of Occupational Titles; the claimant must avoid concentrated exposure to workplace hazards; the claimant is limited to the performance of unskilled-to-semiskilled work, consisting of simple-to-some moderately complex tasks, undertaken in a work setting free of strict time demands or strict high production quotas, which setting is static, in that it would impose few, if any, work-related changes, which setting imposes no more than incidental contract with the public, and no more than frequent, superficial [defined as precluding group tasks, as well as tasks involving sales, negotiation, conflict resolution, the direction or management of others] contact with co-workers and supervisors.

(Tr. 125-126) (alterations in original). On March 26, 2018, Elizabeth Das, MD, made the same findings on reconsideration. (Tr. 156).

### D. Relevant Testimonial Evidence

Revello testified at the administrative hearing. (Tr. 42-64). She drove to work and doctors' appointments. (Tr. 43). For the past three years, she worked about 6 hours a week for

6

Visiting Angels and had never worked between 30 to 40 hours a week. (Tr. 43-45). In that position, she did light housework, personal care, and occasionally ran errands. (Tr. 48-49). She did not graduate from high school, but she had become a licensed hairdresser. (Tr. 44). She had also previously worked as a hairdresser, and, in various positions, she had been required to stand and lift objects ranging from people trying to get into the chairs to items between 20 and 50 pounds. (Tr. 46, 48). She stopped working at a private salon in 2015 because she was working alone; was becoming incontinent with any kind of stressful movement, such as lifting or going up stairs; and was losing feeling in her fingers and feet. (Tr. 48).

Revello stated that she was prevented from working because of her pain, migraines, back, left hip, and her medication made her sick. (Tr. 50). She had migraines between two to six times a month, each lasting from one to three days. *Id.* She estimated that they ranged between a five to a ten in their severity and were typically behind her eyes on the left side. (Tr. 52). She did not need any help keeping track of her medication. (Tr. 53). She also explained that her bladder had prolapsed because of her hysterectomy. (Tr. 61-62). It caused her to feel pressure in the area, wet herself, and wear special undergarments. (Tr. 62). She went to the bathroom about ten times a day. *Id.*

## III. Law & Analysis

### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). And, even if a preponderance

7

of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones*, 336 F.3d at 477); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"). But, even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

      **B.**      **Step Two: Non-Severe Impairment Findings**

Revello argues that the ALJ erred in finding that her urinary incontinence and prolapsed bladder were not "severe impairments" at Step Two. ECF Doc. 14 at 6-8. Revello asserts that the ALJ should have found that these were severe impairments because: (1) a prior ALJ decision found them severe; and (2) evidence in the record showed that her conditions continued or *worsened* throughout the relevant period. ECF Doc. 14 at 6-7. Further, Revello appears to contend that this error was not harmless because the ALJ failed to consider her incontinence

8

issues at Step Four. ECF Doc. 14 at 7-8.³ The Commissioner disagrees. ECF Doc. 16 at 11-18. Revello reiterates her arguments in reply, adding that the Commissioner cannot defend the ALJ's decision based on after-the-fact justifications. ECF Doc. 17 at 1-5.

At Step Two, a claimant has the burden to show that she has *at least one* "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). A "severe impairment" is a medical condition that has more than minimal effect on mental or physical function and is expected to last for 12 months or cause death. 20 C.F.R. §§ 404.1509, 404.1522; *Salmi v. Sec'y of Health & Human Servs.*, 744 F.2d 685, 691 (6th Cir. 1985). This is a threshold inquiry "intended to 'screen out totally groundless claims.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). If the claimant doesn't show she has *at least one* "severe" impairment, she's categorically *not* disabled. 20 C.F.R. § 404.1520(c). If she does satisfy this minimal burden, the ALJ has to consider *all of her impairments* (even ones that aren't "severe") at the remaining steps in the sequential evaluation process. *Nejat*, 359 F. App'x at 577 (quoting SSR 96-8p, 1996 SSR LEXIS 5 (Jul. 2, 1996)). And, so long as the ALJ considers all the claimant's impairments in the other steps, any Step Two error is harmless. *Nejat*, 359 F. App'x at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

The ALJ failed to apply the proper legal standards in making his findings as to Step Two because he failed to adequately articulate his finding. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. Further, the error was not harmless because the ALJ also failed to show that he considered Revello's prolapsed bladder and urinary incontinence impairments in his subsequent

---

[3] Although Revello's challenge to the RFC could also be construed as a separate issue, because it is premised on her argument regarding the non-severity findings, the argument is better construed as a form of harm arising from the alleged error with the ALJ's evaluation of the severity of Revello's impairments.

9

Step Four analysis.  The sum total of the ALJ's discussion of why the conditions were non-severe was that "there was no evidence contained in the record indicating that these conditions would cause any more than minimal effect on the claimant's ability to perform work activity."  (Tr. 19).  The ALJ did not cite any evidence in support of that statement.  *Id.*  Normally, although such minimal discussion may constitute a *per se* legal error, the error could be remedied by the ALJ showing some indication that the impairments were considered in the decision's remaining analysis.  *Nejat*, 359 F. App'x at 577; *see Buckhannon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) (noting that the court "read[s] the ALJ's decision as a whole and with common sense").

Here, however, the remainder of the ALJ's decision is devoid of any discussion of Revello's prolapsed bladder and urinary incontinence.  (*See* Tr. 19-26).  The ALJ discussed Revello's chronic diffuse pain, headaches, and mental health conditions but never referred to her prolapsed bladder, urinary incontinency, or even the related issues of her urgency and frequency.  *Id.*  The ALJ never referred to or discussed the treatment notes of Revello's urologist, Dr. Zhao.  *See id.*  In reality, the ALJ made only two boilerplate statements that could be argued to bear upon the issue of Revello's genitourinary claims ("I have considered all medically determinable impairments, both severe and nonsevere, in finding the residual functional capacity determine[d] herein" (Tr. 19); and "I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . ." (Tr. 21).

As a result, the ALJ's minimal discussion failed to provide a sufficient basis for "meaningful judicial review;" it provides no bases for a claimant (or a judge) to find a logical bridge between the evidence and ALJ's finding that the impairments had only a minimal effect

10

on Revello's physical functioning or could be expected to last for a year.  20 C.F.R. §§ 404.1509, 404.1522; *Fleischer*, 774 F. Supp. 2d at 877.

The Commissioner contends that the ALJ did consider the effects of Revello's non-severe impairments – citing the ALJ's non-severity finding.  ECF Doc. 16 at 16.  The Commissioner continues by identifying the many ways in which the ALJ's RFC findings are not obviously inconsistent with the potential limitations from Revello's bladder and incontinence conditions.  ECF Doc. 16 at 17.  But these after-the-fact justifications are a mere fig leaf in the Commissioner's attempt to salvage the ALJ's decision.  "[T]he courts may not accept appellate counsel's post hoc rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, at *6 [published in full-text format at 1993 U.S. App. LEXIS 23975] (6th Cir. Sept. 16, 1993) (unpublished opinion) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citation omitted)).

Absent from the ALJ's opinion – and the Commissioner's brief – are any citations to the ALJ's substantive consideration of the limitations potentially caused by Revello's bladder prolapse and urinary incontinency.  And for good reason – because there aren't any.  Consequently, there is no way for this court to satisfy itself that the ALJ fulfilled its obligations under the regulations.  *Nejat*, 359 F. App'x at 577 (quoting SSR 96-8p, 1996 SSR LEXIS 5 (Jul. 2, 1996)).  Because the ALJ legally erred in his Step Two analysis and the error was not remedied by a more thorough discussion in the remainder of the ALJ's decision, the error was not harmless.  *Nejat*, 359 F. App'x at 577.

In fairness, it is possible that the ALJ's thought process was exactly what the Commissioner argues.  And it is possible that the ALJ discounted Revello's genitourinary claims

11

because she barely mentioned them in her many doctor visits or in her administrative function report. (Tr. 317). It is true that she barely mentioned them in her ALJ hearing testimony. But the court's role is not to engage in guesswork or to supply reasoning not stated by the ALJ.

The foregoing analysis obviates the need to engage in a detailed discussion of Revello's contention that the ALJ should have included additional limitations in the RFC. It is certainly plausible that someone who faced the genitourinary issues Revello claims might have needed additional limitations in the RFC. The ALJ's lack of further analysis of Revello's impairments failed to satisfy his obligations under the Social Security regulations and that non-harmless failure cannot be remedied by reviewing the decision as a whole. SSR 96-8p, 1996 SSR LEXIS 5; *Nejat*, 359 F. App'x at 577. Accordingly, remand is required.

### IV.  Conclusion

Because the ALJ failed to apply proper legal standards in fully reviewing and discussing Revello's non-severe impairments, the Commissioner's final decision denying Revello's applications for DIB and SSI is vacated and that Revello's case is remanded for further consideration.

**IT IS SO ORDERED.**

Dated: December 22, 2021

Thomas M. Parker
United States Magistrate Judge